United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MASTEROBJECTS, INC.,

    Plaintiff,

v.

AMAZON.COM, INC.,

    Defendant.

No. C 20-08103 WHA

**ORDER RE MOTION TO DISMISS**

## INTRODUCTION

In this patent infringement action, the accused infringer moves to dismiss the claims of willful infringement in the second amended complaint. A simple notice letter would have likely avoided the necessity of this long order traversing a complicated matter — sometimes in painful detail — as well as the work by two opposing law firms preparing briefing on the issue. To the extent stated below, the motion is **GRANTED IN PART** and **DENIED IN PART.**

## STATEMENT

Patent owner MasterObjects, Inc. brings this action against defendant Amazon.com, Inc. for infringement of four patents: U.S. Patent Nos. 8,539,024, 9,760,628, 10,311,073, and 10,394,866. All patents concern asynchronous communication technology that allows search engines to suggest search terms based on the characters a user types into the search bar (Sec. Amd. Compl. ¶ 12).

MasterObjects filed its complaint in May 2020 but subsequently amended its pleading to add infringement charts, reallege post-suit willful infringement with "greater specificity," and include a recent PTAB *inter partes* review involving the '024 patent. Amazon moved to dismiss the first amended complaint, but withdrew its motion when MasterObjects agreed to file a second amended complaint revising its willfulness allegations (Dkt. Nos. 120 at 4–5; 120-1 at ¶ 7; 126; 129; 134).

MasterObjects filed its second amended complaint in June 2021. This operative pleading states that Amazon is an "e-commerce juggernaut" and "ad powerhouse" in part because of an instant search feature, which allegedly infringes the patents-in-suit. To support MasterObjects' claim that Amazon willfully infringed, the operative pleading alleges that Amazon: had pre-suit knowledge of the patents-in-suit, and of the related patent portfolio, since 2011; had post-suit knowledge of infringement upon MasterObjects' filing of its initial complaint in May of 2020; exhibited egregious conduct in the form of "bad faith tactics," including discovery evasions, boilerplate invalidity contentions, and other dilatory tactics meant to impede MasterObjects. MasterObjects argues that, taken as a whole, Amazon's egregious, willful infringement justifies enhanced damages (Sec. Amd. Compl. ¶¶ 26, 34, 35, 40, 44, 77, 103, 117, 118, 122, 148, 149).

Amazon now moves to dismiss the willfulness allegations in MasterObjects second amended complaint. This order follows full briefing and oral argument, held telephonically due to the COVID-19 epidemic.[*]

**ANALYSIS**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," where facial plausibility turns on providing enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept well-pled factual allegations in the complaint

---

[*] Per Amazon's request, this order take judicial notice of the Patent and Trademark Office ("PTO") documentation filed in support of its motion to dismiss. *See* FRE 201(b)(2).

2

as true and "construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Section 284 of the Patent Act states that, in cases of infringement, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. In *Halo*, the Supreme Court held that district courts may, in their discretion, award enhanced damages pursuant to Section 284 for egregious cases of misconduct beyond typical infringement — which abrogated the previous, more rigid, standard. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932, 1935 (2016). Enhanced damages are "generally reserved for egregious cases of culpable behavior" involving conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or — indeed — characteristic of a pirate." *Ibid.* Most patent cases addressing enhanced damages, including this one, key in on willful infringement.

Willfulness requires both knowledge of the infringed patent and knowledge of infringement. Subjective willfulness — when the alleged infringer acted despite a risk of infringement that was either known or so obvious it should have been known — *can* support an enhanced damages award. But, a claim for enhanced damages for willful infringement is not adequately stated when all that is alleged is knowledge of the patent and direct infringement. *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987–88 (Fed. Cir. 2021); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1308–10 (Fed. Cir. 2019); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017).

**1.  MASTEROBJECTS' PATENT FAMILY.**

MasterObjects' allegations of pre-suit knowledge concern the extended patent family of the patents-in-suit, so this order maps out the various relationships, as illustrated below (Br. 2). The patents-in-suit are colored blue:

3



At the base of MasterObjects' patent family tree, we have U.S. Patent No. 8,112,529, which is not asserted in this action. As indicated in our chart, two lines of patents relate to the '529 patent. *First*, a continuation-in-part of the '529 patent, U.S. Patent No. 7,752,326 heads the first branch. MasterObjects previously asserted the '326 patent against Amazon in 2011; our parties stipulated to dismissal of that action. *See MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 11-01055, Dkt. No. 30 (N.D. Cal. Aug. 2, 2011) (Judge Charles R. Breyer). Like its predecessor the '529 patent, the '326 patent is also not asserted here. A continuation-in-part of the '326 patent, U.S. Patent Application No. 12/176,984 was abandoned. A continuation of the '984 application, the '073 patent, is one of our patents-in-suit (Sec. Amd. Compl. ¶¶ 41–43, 45).

*Second*, a continuation of the '529 patent, the '024 patent is the patent-in-suit that heads the other branch of the MasterObjects' patent family. The '628 patent is a continuation of the '024 patent, and the '866 patent is a continuation of the '628 patent. The '628 and '866 patents are also patents-in-suit (*id.* at ¶¶ 22, 45).

MasterObjects also alleges knowledge on another theory based on U.S. Patent Application Publication No. US-2012/0284329 A1, which corresponds with the '024 patent, as indicated in our figure. To discretely identify the US-2012/0284329 A1 application publication, while also logically connecting it to the patent that arose out of it, this order refers

4

to the application publication as "the '024 *publication*." This order also uses this taxonomy so our readers can clearly distinguish that application publication from the '326 patent, which (as stated) was the subject of our parties' 2011 lawsuit. In 2014, the '024 publication was cited multiple times during the prosecution of five related Amazon patents ("Brooker I–V"). A PTO examiner cited the '024 publication against Brooker I, and Amazon itself subsequently cited the '024 publication in Information Disclosure Statements ("IDSs") it submitted to the PTO during prosecution of Brooker II–V (Sec. Amd. Compl. ¶¶ 51–59, 66).

As an initial matter, MasterObjects states in its opposition that it is no longer asserting an enhanced damages claim based on pre-suit willful infringement as to the '628, '073, and '866 patents (Opp. at 2 n. 2). Accordingly, this order limits its review to pre-suit knowledge of the '024 patent.

### 2. PRE-SUIT KNOWLEDGE OF THE '024 PATENT.

Amazon argues the second amended complaint does not state a claim for enhanced damages based on willful infringement because it fails to properly allege knowledge of the '024 patent. MasterObjects' allegations premise Amazon's pre-suit knowledge of the '024 patent on two separate bases: the 2011 lawsuit between the parties and Amazon's prosecution of Brooker I–V.

*First*, the operative pleading alleges pre-suit knowledge based on MasterObjects' 2011 lawsuit against Amazon that asserted the '326 patent, which is part of the patent family of our patents-in-suit here (Sec. Amd. Compl. ¶¶ 40–43). Allegations of general knowledge of a patent family, or a patent portfolio, are insufficient to allege specific knowledge of a particular patent. The '326 patent, moreover, is not asserted here, and the '024 patent issued more than two years after the previous litigation between the parties concluded; in fact, the litigation concluded six months before the '024 patent's filing date. Knowledge of a patent cannot be plausibly alleged when the triggering event occurred prior to the issuance of the patent. "Defendant could not have divined the eventual issuance of the ['024] patent[] [two] years later," well after the conclusion of that litigation. *Fluidigm Corp. v. IONpath, Inc.*, 2020 WL 408988 at *3 (N.D. Cal. Jan. 24, 2020) (Judge William Alsup); *see WBIP v. Kohler Co.*, 829

5

F.3d 1317, 1341 (Fed. Cir. 2016); *State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).

*Second*, the operative pleading alleges pre-suit knowledge of the '024 patent based on Amazon's interactions with the PTO when prosecuting its patents Brooker I–V (Sec. Amd. Compl. ¶¶ 50–59, 65–66, 75). For Brooker I, the PTO examiner cited the '024 publication — again, not the '024 patent specifically but its application publication number — to Amazon on August 22, 2014. For Brooker II–V, Amazon itself cited the '024 publication to the PTO on October 21, 2014, November 14, 2014, November 25, 2014, and December 1, 2016, respectively (Dkt. No. 144 at ¶¶ 10–13, Exhs. J–M; Sec. Amd. Compl. ¶¶ 51, 55, 58, 66). Critically, all of the citations in Amazon's IDSs to the '024 publication for Brooker I–V occurred *after* the '024 patent had issued.

Courts in our district have found pre-suit knowledge of the patents-in-suit plausibly alleged when the asserted *patents* were cited in the IDSs submitted by the alleged patent infringer to the PTO. *See Corephotonics, Ltd. v. Apple, Inc.*, 2018 WL 4772340 (N.D. Cal. Oct. 1, 2018) (Judge Lucy H. Koh); *Potter Voice Techs., LLC v. Apple Inc.*, 24 F. Supp. 3d 882 (N.D. Cal. 2014) (Judge Claudia A. Wilken). But here, Amazon points out, the IDSs in question only cited the application publication. In *State Industries*, the Court of Appeals for the Federal Circuit held:

> To willfully infringe a *patent*, the patent must exist and one must have knowledge of it. . . . Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.

751 F.2d at 1236 (emphasis in original). Relying on *State Industries*, district courts have held, albeit at different procedural postures, that citing a patent application in an IDS does not establish knowledge of the issued patent. *See, e.g.*, *Kaufman v. Microsoft Corp.*, 2020 WL 364136, at *4 (S.D.N.Y. Jan. 22, 2020) (Judge Alvin K. Hellerstein).

But we are at the pleading stage. And, both the PTO's citation to Amazon of the '024 publication for Brooker I and Amazon's citations to the '024 publication in four IDSs for Brooker II–V occurred *after* the '024 patent had arisen from the '024 publication. Amazon

6

states "it would make perfect sense" for the patent attorney to simply slap the old prior art lists on the new IDSs without checking to see if any applications had issued "without further inspection thereof" (Br. 8). MasterObjects, in response, cites *Blitzsafe Tx. v. Volkswagen Grp. of Am., Inc.*, 2016 WL 4778699, at *6 (E.D. Tex. Aug. 19, 2016) (Judge Roy S. Payne). In *Blitzsafe*, the court held that the alleged infringer "could have learned of the . . . patent when it cited the [patent application] in a Patent Office proceeding." Amazon argues *Blitzsafe* is distinguishable because the PTO proceeding at issue in that case, *inter partes* reexamination, is more substantial than the listing of prior art in IDSs during patent prosecutions (Br. 9). *Blitzsafe* did acknowledge that context matters in its analysis, but Amazon asserts a (speculative) difference in degree, not a difference in type that warrants writing off *Blitzsafe*'s import. As will be explained, this order does not accept the holding in *Blitzsafe* wholesale but accepts its reasoning as to the plausibility of allegations of knowledge *of a patent*.

Construing the facts in the light most favorable to MasterObjects, this order finds it plausible Amazon had knowledge of the '024 patent due to the fact that it addressed the '024 publication five times in PTO proceedings after the '024 patent had issued. Amazon's theory that the prosecuting lawyers never connected the dots might also be a plausible theory, but that will not defeat a pleading at this point in the action. In sum, MasterObjects sufficiently alleges pre-suit knowledge of the '024 patent.

### 3. PRE-SUIT KNOWLEDGE OF INFRINGEMENT OF THE '024 PATENT.

Amazon argues that, even if the operative pleading adequately alleges pre-suit knowledge of the '024 patent, it fails to allege Amazon had pre-suit knowledge *of infringement* of the '024 patent. Knowledge of infringement does not arise from knowledge of the asserted patent as a matter of course; it must be the subject of discrete, albeit related, allegations. For example, allegations that a patent owner sent a letter merely notifying a third party of the existence of a particular patent, without accusing that third party of infringement, is, by itself, insufficient. *See Bayer Healthcare*, 989 F.3d at 987; *Fluidigm*, 2020 WL 408988, at *5.

The operative pleading's allegations regarding Amazon's knowledge of the '024 publication do not also plausibly allege Amazon's knowledge of infringement. MasterObjects

7

alleges no link, plausible or otherwise, between Brooker I–V and Amazon's products or instrumentalities, much less a link between the '024 publication cited during the prosecution of the Brooker patents and Amazon's products or instrumentalities. Lacking allegations that make this connection, the operative pleading fails to explain how citations to the '024 publication can give rise to Amazon's knowledge that the instrumentalities-at-issue infringe the '024 patent. Nor does *Blitzsafe* salvage MasterObjects' pleading. *Blitzsafe* did not consider knowledge of infringement and was decided prior to the *Bayer Healthcare*, *SRI*, *Arctic Cat*, and other decisions from the Court of Appeals for the Federal Circuit that clarified willfulness requirements.

At the hearing, MasterObjects argued its operative pleading does allege knowledge of infringement because the citations to the '024 publication in the Brooker IDSs must be considered in the context of the rest of the allegations in the second amended complaint, and specifically cited Paragraph seventy-five (*see also* Opp. 8–9). Paragraph seventy-five summarizes four other allegations beyond the '024 publication: (1) the 2011 patent litigation regarding the '326 patent; (2) PTO proceedings for Amazon's "Brinck" search patents that addressed MasterObjects' patent family; (3) Amazon's Chief Intellectual Property Counsel Mr. Hayden's direct involvement with various matters concerning the issues in this litigation; and (4) Amazon's identification here as a relevant witness a named inventor for its Brinck search patents, Mr. Amacker. This order has already addressed the 2011 litigation and found it provided no support for MasterObjects' willfulness claim because it occurred before the '024 patent issued, and hence reviews the allegations regarding the Brinck patents, Mr. Hayden, and Mr. Amacker before considering all the allegations together.

*First*, the operative pleading alleges that Amazon's prosecution of its Brinck patents, which involve search functionality, addressed MasterObjects' '326 patent, the patent application for the '326 patent, and the '984 application after the '024 patent had issued (Sec. Amd. Compl. ¶¶ 47–49, 60–64, 67–74). As explained, even substantive references to patents in the alleged infringer's patent prosecutions, without more, fail to sufficiently allege knowledge of *infringement*. This conclusion is further justified because the '326 patent is not

8

asserted in this litigation, and the '984 *application* could not be asserted in this litigation. The '326 patent cited in the Brinck patent prosecutions, indeed, was the patent at issue in the 2011 litigation where our parties stipulated to dismissal, undermining any reasonable inference that citations to it in Amazon's prosecution of the Brinck patents would give rise to knowledge of infringement of the '024 patent.

*Second*, MasterObjects premises Amazon's knowledge of infringement of the '024 patent on the participation of Amazon's chief IP counsel in various matters related to the patents-in-suit, alleging he:

> was directly involved in the prosecution of Amazon applications that cited the '024 Patent[] [publication]. As Chief Intellectual Property Counsel, Mr. Hayden: oversaw Amazon's patent prosecution due diligence; knew of the [2011] *Amazon I* complaint against Amazon instant search instrumentalities; was familiar with the accused instrumentalities; knew Amazon was citing the '024 Patent [publication] to the P.T.O.; and knew Amazon, post-'024 Patent issuance, repeatedly argued that Amazon instant search patent applications were patentable over MasterObjects' disclosures

(*id.* at ¶ 75). These allegations, taken in the light most favorable to MasterObjects, *may* be consistent with the theory that, through Mr. Hayden, Amazon had knowledge of infringement of the '024 patent — but mere consistency is insufficient to state a claim. Rather, the allegation that Mr. Hayden's oversight of all intellectual property matters at Amazon precipitated specific knowledge of infringement of the '024 patent is merely a conclusory assertion. The operative pleading contains no factual matter indicating Mr. Hayden knew *how* or *why* Amazon's instrumentalities specifically infringed the '024 patent. MasterObjects submits a chain of inferences too unreasonably speculative to state a claim.

*Third*, the operative pleading alleges knowledge of infringement because Amazon identified Matthew Amacker as a relevant witness. Mr. Amacker is a named inventor of the Brinck search patents and previously a principal engineer for Amazon's search technology. MasterObjects' arguments that this identification supports the allegation Amazon had knowledge of infringement is specious. As explained, the various prosecutions of the Brinck patents do not give rise to the inference Amazon had knowledge of infringement of the '024

1  patent.  Moreover, the allegations related to Mr. Amacker fail to support knowledge of
2  infringement for the same reasons as the allegations regarding Mr. Hayden — allegations
3  merely consistent with knowledge of infringement are insufficient.  This litigation, moreover,
4  concerns Amazon's instant search.  Amazon's identification of Mr. Amacker, the person who
5  oversaw the allegedly infringing instrumentality, is unremarkable, and certainly nothing that
6  would give rise to the inference MasterObjects suggests.

7  Even considering all of MasterObjects' miscellany of allegations of Amazon's familiarity with the '024 patent together, the second amended complaint fails to allege Amazon had pre-suit knowledge of infringement of the '024 patent.  This order will not manufacture a signal from the noise.

Nor has MasterObjects sufficiently alleged Amazon willfully blinded itself to infringement of the '024 patent.  The only applicable allegation is a conclusory sentence generally alleging willful blindness as to all the patents-in-suit (*id.* at ¶ 76).  Even assuming the operative pleading sufficiently alleges Amazon's subjective belief there was a high probability it was infringing the '024 patent based on a totality of the circumstances, there are no specific allegations that Amazon took deliberate actions to avoid learning of infringement nor that it can be reasonably inferred Amazon should have known of infringement.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 771 (2011); *Arctic Cat*, 876 F.3d at 1371.

In sum, MasterObjects has not adequately pled Amazon's knowledge of infringement of the '024 patent, and its pre-suit willfulness claim fails.

### 4. ENHANCED DAMAGES FOR POST-SUIT WILLFUL INFRINGEMENT.

This order next considers whether MasterObjects' second amended complaint sufficiently pleads enhanced damages based on Amazon's post-suit willful infringement.  The operative pleading alleges post-suit egregious misconduct for all four patents-in-suit, rather than only the '024 patent.   While the Court of Appeals for the Federal Circuit has recognized that post-suit misconduct can support a claim for enhanced damages, as explained, willfulness requires pleading more than knowledge of the patent and direct infringement — it requires a

specific intent to infringe.  *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017); *Bayer Healthcare*, 989 F.3d at 987–88.

The operative pleading alleges Amazon continued to provide the allegedly infringing instrumentality, the instant search function, even after MasterObjects filed its original complaint alleging infringement of the patents-in-suit (Sec. Amd. Compl. ¶ 81).  Beyond this, the operative pleading provides several examples of Amazon's litigation misconduct which allegedly evince intentional infringement of the patents-in-suit, including:  (1) untenable claim construction positions rejected in several other, prior actions; (2) the "assertion of large numbers of references as anticipatory"; (3) that Amazon copied its assertions from Facebook in a related matter; (4) that Amazon asserts inequitable conduct defenses in bad faith (again, copied from Facebook); (5) that Amazon, in bad faith, asserts that the patents-in-suit are unenforceable for lack of common ownership; (6) that Amazon engaged in bad faith by proffering boilerplate Section 101 invalidity contentions; and (7) that Amazon improperly evaded discovery (Sec. Amd. Compl. ¶¶ 96–97, 109–22).

This order finds, given the flexible *Halo* standard, that the second amended complaint properly states a claim for post-suit willful infringement.  The second amended complaint adequately alleges post-suit knowledge of the patents-in-suit and knowledge of infringement.  With these prerequisites satisfied, and construing all well-pled factual allegations in the light most favorable to MasterObjects, the totality of allegations of post-suit misconduct make it reasonable to infer that Amazon's infringement is intentional.  This order acknowledges Amazon's arguments explaining its actions in this litigation but finds it premature to dismiss the enhanced damages claim as to post-suit willful infringement.  Amazon's arguments are for summary judgment, not on the pleadings.

**CONCLUSION**

For the foregoing reasons, Amazon's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

MasterObjects' claim as to pre-suit willful infringement is **DISMISSED WITH PREJUDICE**.  As explained, MasterObjects has twice amended its complaint to revise its willful infringement

11

1  allegations. MasterObjects first amended its original complaint pursuant to Rule 15(a)(2), which
2  Amazon did not oppose (Dkt. Nos. 120, 127). Amazon then moved to dismiss the first amended
3  complaint, and its motion specifically (and repeatedly) argued MasterObjects' pleading did not
4  sufficiently allege pre-suit knowledge of infringement (Dkt. No. 129 at 1, 4, 6). Amazon
5  eventually withdrew that motion pursuant to a joint stipulation that allowed MasterObjects to file
6  its second amended complaint. The second amended complaint explicitly fortifies MasterObjects'
7  willful infringement allegations (Dkt. No. 134). The second amended complaint fails to
8  sufficiently address knowledge of infringement even though Amazon had previously pointed out
9  the defect. Any further amendment is accordingly futile; MasterObjects will not get another bite
10 at the apple.

11 MasterObjects' enhanced damages claims as to post-suit willful infringement survives for
12 now.

13 One concluding comment. All this may well have been avoided with a simple notice letter.
14 The failure to send such a letter, which is easy to do, has to be emphasized. It wastes the resources
15 of the parties in drafting motions analyzing the willfulness claims and wastes the resources of the
16 Court in understanding and ruling on those motions. The Court understands the strategic reason
17 why a patent plaintiff hesitates to send such letters — mainly because they invite declaratory relief
18 suits in a district of the alleged infringer's choosing — but that does not excuse the failure to send
19 such a letter.

**IT IS SO ORDERED.**

Dated: October 7, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE