SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
HOSIE RICE LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111
(415) 247-6000 Tel.
(415) 247-6001 Fax

*Attorneys for Plaintiff*
*MASTEROBJECTS, INC.*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MASTEROBJECTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 3:20-cv-08103-WHA<br><br>**PLAINTIFF MASTEROBJECTS, INC.'S NOTICE OF MOTION AND MOTION FOR DISQUALIFICATION**<br><br>Date: March 24, 2022<br>Time: 8:00 a.m.<br>Judge: Hon. William Alsup<br>Courtroom: 12, 19th Floor<br><br>Complaint Filed: May 5, 2020<br>Trial Date: May 9, 2022<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ..................................................................................................... 1

STATEMENT OF THE ISSUES TO BE DECIDED ...................................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 3

I.      INTRODUCTION AND STATEMENT OF THE ISSUES .................................... 3

II.     THE FACTS ................................................................................................................ 4

III.    THE LAW ................................................................................................................... 5

IV.     ARGUMENT .............................................................................................................. 7

V.      CONCLUSION ........................................................................................................... 8

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA  94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA  94111

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page**

*Adams v. Aerojet General Corp.*,
    104 Cal. Rptr. 2d 116 (2001) ........................................................................................6-7

*MD Helicopters, Inc. v. Aerometals, Inc.*,
    2021 WL 1212718, at * 5, No. 2:16-cv-02249-TLN-AC (E.D. Cal. March 30, 2021)..........6

*San Gabriel Basin Water Quality Authority v. Aerojet General Corp.*,
    105 F. Supp. 2d 1095 (2000) ..............................................................................................6

**Miscellaneous**

California Rule of Professional Conduct 1.9....................................................................................5
Model Rules of Professional Conduct 1.9, comment 7 ...................................................................6

**1**  <u>NOTICE OF MOTION AND MOTION FOR DISQUALIFICATION</u>

**2**  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**3**  PLEASE TAKE NOTICE that on March 24, 2022 at 8:00 a.m., or as soon thereafter as this

**4**  matter can be heard, in the courtroom of District Judge William Alsup, located at the San Francisco

**5**  Courthouse, Courtroom 12 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102,

**6**  Plaintiff MasterObjects ("MasterObjects" or "Plaintiff") will move this Court for an Order to

**7**  disqualify Amazon's counsel, Hueston Hennigan LLP.

**8**

**9**  Amazon's case is run by senior in-house Amazon patent lawyer, Scott Sanford.

**10**  MasterObjects just learned that Mr. Sanford worked for MasterObjects' boutique law firm for two

**11**  years.  During Mr. Sanford's employment, the small, boutique law firm drafted and filed what

**12**  would become MasterObjects' parent patent, the '529 patent.  The '529 specification is common to

**13**  every patent asserted here.

**14**

**15**  Mr. Sanford did **not** list his work at the MasterObjects law firm on his LinkedIn resume;

**16**  there is just an inexplicable gap.  Nor did he tell his outside lawyers, whom he directed, that he had

**17**  worked for the MasterObjects law firm, even as Amazon sought documents from Mr. Sanford's

**18**  prior law firm, and even as Amazon filed motions to depose Mr. Sanford's former colleagues at the

**19**  firm.  Mr. Sanford, in short, **concealed** his prior role, which is directly contrary to law, as set out

**20**  below.

**21**

**22**  This motion is based on this Notice of Motion and Motion, the following Memorandum of

**23**  Points and Authorities, the accompanying declarations, all files and records in the action, any oral

**24**  argument, and such additional matters as may be judicially noticed by the Court or may come

**25**  before the Court prior to the hearing on this matter.

**26**  <u>RELIEF REQUESTED</u>

**27**

**28**

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111

1    Plaintiff requests that the Court enter an Order Disqualifying Hueston Hennigan LLP as

2    Amazon's counsel.

3    Dated: February 7, 2022                    Respectfully submitted,

4

5                                               */s/ Spencer Hosie*
                                                SPENCER HOSIE (CA Bar No. 101777)
6                                               shosie@hosielaw.com
                                                DIANE S. RICE (CA Bar No. 118303)
7                                               drice@hosielaw.com
                                                DARRELL R. ATKINSON (CA Bar No. 280564)
8                                               datkinson@hosielaw.com
                                                HOSIE RICE LLP
9                                               505 Sansome Street, Suite 1575
                                                San Francisco, CA 94111
10                                              (415) 247-6000 Tel.
                                                (415) 247-6001 Fax
11

12                                              *Attorneys for Plaintiff*
                                                *MASTEROBJECTS, INC.*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF THE ISSUES TO BE DECIDED**

Whether Amazon's counsel should be disqualified given a long-concealed conflict, and whether Mr. Sanford should be precluded from working on the *MasterObjects v. Amazon* matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION AND STATEMENT OF THE ISSUES.**

In this contentious *MasterObjects v. Amazon* case, Amazon's in-house client lawyer is Scott Sanford.  Mr. Sanford **runs** the case for Amazon.  He makes the litigation decisions, both significant and mundane.  Amazon's outside counsel, Hueston Hennigan, answer to Mr. Sanford.

MasterObjects learned just 11 days ago, and purely serendipitously, that Mr. Sanford previously worked for MasterObjects' longstanding boutique patent prosecution firm, Fliesler Meyer.  He did so for two years, in 2000 through 2002.  It was in exactly this period that the small Fliesler Meyer firm drafted and filed the application that matured into the MasterObjects '529 patent. The '529 specification is common to all of the asserted patents, and is existentially important to this case.

Oddly, Mr. Sanford's LinkedIn resume omits his years at Fliesler Meyer.  This is the only gap in his resume online.  His profile covers in detail what Mr. Sanford did both before and after working for MasterObjects' patent law firm.

Mr. Sanford did not disclose his prior employment at MasterObjects' law firm to us.  More, Hueston Hennigan, Amazon's outside counsel, have confirmed in writing that Mr. Sanford did not disclose his prior employment at MasterObjects' law firm to his own counsel.  That is, despite having dozens if not hundreds of calls or meetings about MasterObjects and its patents, including motions to depose Mr. Sanford's former Fliesler Meyer colleagues, Mr. Sanford not once said, "oh, by the way, I worked at Fliesler Meyer when the firm drafted the MasterObjects parent patent."  Why on earth not?

A lawyer in Mr. Sanford's position is presumed to have a conflict if this lawyer had access

to confidential information: the ethical rule is clear.  *See* below § III.  This is a rebuttable presumption.  But central to the ethical duty is the obligation to **disclose** the prior affiliation, precisely so that the former client and now adverse party can ask the right questions.  This is exactly what the law requires.  And it is exactly what Mr. Sanford declined to do, a decision that his outside counsel then endorsed by conclusorily saying that Mr. Sanford knew nothing and now remembers nothing, and it was ours to prove otherwise (which inverts the law).

On this record, Mr. Sanford and Hueston Hennigan should be disqualified.  Otherwise, he and Amazon would be rewarded by concealing an issue they were ethically obligated to disclose, and so precluding the inquiry that MasterObjects had the right to make.

## II.    THE FACTS.

Here are the undisputed facts:

1.    For close to two years and in two separate jurisdictions, MasterObjects has been prosecuting a four-patent infringement case against Amazon.  As is its wont, Amazon has defended the case with great aggression, filing numerous motions, drafting a 50-page "inequitable conduct" attack, and serially deposing MasterObjects' patent prosecution lawyers who worked at MasterObjects' longstanding patent firm, Fliesler Meyer.

2.    Amazon's in-house lead lawyer, Scott Sanford, worked as a patent lawyer at Fliesler Meyer for two years, 2000-2002.  This was when the firm drafted and filed the MasterObjects parent patent, the '529 patent (filed August 2001).  This was a small firm, with 13 lawyers in April 2001.  *See* Ex. A attached to the Declaration of Spencer Hosie ("Hosie Decl.") (2001 "bio" archive page).  They all shared space in half of a floor in a San Francisco office building.  The lawyers frequently had all-hands meeting, and naturally talked about their work.  Indeed, Mr. Sanford appears on the same archival page of the firm's "bio" section as the two Fliesler Meyer employees actively working on MasterObjects, Marty Fliesler and Karl Kenna.  *See* Ex. B attached to the Hosie Decl.

3.    Mr. Sanford did not disclose to MasterObjects' counsel that he worked for

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111

MasterObjects' patent firm.   More, this two-year employment is missing from Mr. Sanford's

LinkedIn profile (just an inexplicable gap).  *See* Ex. C attached to the Hosie Decl.

4.      Amazon's outside counsel confirmed that Mr. Sanford did not once mention that he

worked for MasterObjects' law firm to any Hueston Hennigan lawyer, even as these lawyers secured

subpoenas to depose Mr. Sanford's former colleagues.  *See* Ex. D to the Hosie Decl. (letter admitting

that Mr. Sanford kept this information from his own lawyers).  How could this **not** have come up

absent a conscious decision to conceal?  Because Sanford concealed this information from his own

counsel, they perforce concealed it (by omission) from us.

5.      MasterObjects serendipitously learned of Mr. Sanford's work at the MasterObjects

law firm on January 25, 2022.  In preparing Karl Kenna for deposition, one of Mr. Sanford's former

colleagues at Fliesler Meyer, the witness asked who was running the case for Amazon.  We told him

it was Scott Sanford.  Mr. Kenna asked if it was the same Scott Sanford who worked at Fliesler

Meyer.  It was, as Hueston Hennigan has now confirmed.

6.      MasterObjects sent a letter to Amazon counsel asking about this issue.  Amazon

counsel asserted that Mr. Sanford learned nothing and remembered nothing, and that it was

MasterObjects' burden to prove otherwise.  *See* Ex. D.  This gets the law exactly backwards, as set

forth below.  Oddly, Hueston Hennigan's letter did not explain the gap in Mr. Sanford's LinkedIn

resume.  Nor did the letter offer any explanation as to why Mr. Sanford neglected to tell his own trial

team that he had worked for MasterObjects' patent law firm during the most critical multi-year

period.

This motion follows.

## III.    THE LAW.

California Rule of Professional Conduct 1.9 governs a lawyer's duty to a former client.  In a

"successive representation" context, *i.e.*, a lawyer first working with a firm for a client, and then

joining a firm directly adverse to that client, there is a rebuttable presumption that confidential

information could have been learned by the lawyer while at the first firm. ("First, if the nature of the representation is such that confidences could have been exchanged between the lawyer and the client, courts will conclusively presume they were exchanged."). *See MD Helicopters, Inc. v. Aerometals, Inc.*, 2021 WL 1212718, at * 5, No. 2:16-cv-02249-TLN-AC (E.D. Cal. March 30, 2021). This presumption can be rebutted, however, "where the lawyer can show that there was no opportunity for confidential information to be divulged." *Id.* But self-interested declarations asserting no access, standing alone, will **not** rebut the presumption. *Id.*

The Courts understand the "common-sense" notion that "people who work in close quarters talk with each other, and sometimes about their work." *San Gabriel Basin Water Quality Authority v. Aerojet General Corp.*, 105 F. Supp. 2d 1095 (2000).

The law is clear that the lawyer seeking to be adverse to a former client has the burden of proving that the lawyer in fact acquired no confidential information. *See* Model Rules of Professional Conduct 1.9, comment 7. The burden falls on the once retained but now adverse lawyer, not on the former client and current adversary.

Critically, all of these rules presuppose the **disclosure** by counsel of a potential conflict. The process requires an inquiry, where the lawyer adverse to a former client must establish, with more than conclusory declarations, that the lawyer in fact acquired no confidential information.

None of these rules make sense if the potentially conflicted lawyer can simply decide unilaterally that she acquired no confidential information and so—by secret fiat—wish the issue away.

*Adams v. Aerojet General Corp.*, 104 Cal. Rptr. 2d 116 (2001) contains a thoughtful discussion of the law. There, a lawyer left one firm, started another and—years later—filed a case adverse to his former firm's client. The lower court preemptively disqualified the lawyer, based on constructive imputed knowledge alone. The Court of Appeals reversed, holding that "disqualification depends on a fact-based examination of the nature and extent of [the] Lawyer's

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA  94111

involvement with and exposure to Firm A's earlier representation of Client and specifically whether confidential information material to the current lawsuit would normally have been imputed to the Lawyer…." *Adams*, 104 Cal. Rptr. at 119.  The Court of Appeals set out the process of this fact-based inquiry as follows: The client need not prove that the lawyer actually possesses confidential information to warrant the requisite inquiry.  This is, said the Court, "the rule by necessity, for it is not within the power of the former client to prove what is in the mind of the attorney." *Id.* at 121.

Rather, the inquiry turns on the likelihood that the lawyer learned such information.  Was it a small firm, where all worked closely together?  How close, substantially, and the two matters— the matter and subsequent dispute (here: they are identical, as the '529 specification is central to Amazon's claims arguments, its position that the Preferred Embodiment in fact defines the invention, and so forth).

The "attorney whose disqualification is sought should carry the burden of proving that he had no exposure to the confidential information.…  **That burden requires an affirmative showing and is not satisfied by a conclusory denial**." *Adams*, 104 Cal. Rptr. at 127 (emphasis ours).

## IV.  <u>ARGUMENT</u>.

It is apparent that Mr. Sanford concealed his prior work at MasterObjects' patent firm; was the Fliesler Meyer two-year gap in his LinkedIn resume just a coincidence?  Are we to believe that it not once occurred to Scott Sanford to mention to his current trial team that he once worked for MasterObjects' small patent firm?  How could this be, as Mr. Sanford and his trial team filed successive motions to depose Mr. Sanford's prior colleagues at the Fliesler Meyer firm, just as they filed discovery motions to compel hordes of Fliesler Meyer documents?  Did Mr. Sanford simply forget he worked at Fliesler Meyer?  Impossible.

There is only one inescapable conclusion: Mr. Sanford concealed his prior work at MasterObjects' firm, in both his expurgated LinkedIn resume, and his resolute refusal to tell his trial team that he worked at the very firm whose MasterObjects representation is now—at Amazon's

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA  94111

instigation—central to this case.

Mr. Sanford had a duty to disclose his prior employment **so** that MasterObjects could ask the right questions and investigate.  Mr. Sanford did not have the right to (silently) conclude that there was no problem.  He did not have the right, upon discovery, to say that it was MasterObjects' obligation to prove that he had confidential information.  Nor did his outside counsel have that right. *See Adams*, above.  The law is exactly to the contrary.

<u>*The Remedy*</u>

This is a **process** problem.  It may be that Mr. Sanford can establish that he knew nothing of MasterObjects, despite working in close proximity with the Fliesler Meyer lawyers running the MasterObjects patent drafting and prosecution.  **But that supposition misses the point.**  Mr. Sanford had to disclose his prior employment at MasterObjects' small law firm.  Disclosure is the key gating item, and calculated non-disclosure eviscerates the process the ethical rules carefully set forth.

If this decision to conceal has no consequence, then lawyers would be rewarded by concealing that which they are required to disclose.  There must be consequence to deceit by omission: **attention must be paid**.

Disqualifying Hueston Hennigan represents a close call on these facts.  If, as the firm asserts, it knew nothing of Mr. Sanford's work for MasterObjects' law firm, then Hueston Hennigan was simply a vehicle to communicate misinformation to us.  Put bluntly, Mr. Sanford evidently did not tell his own lawyers precisely so that Hueston Hennigan would not disclose the conflict and the need for fact based inquiry to MasterObjects' counsel.  But, to give Hueston Hennigan a pass here directly gives Mr. Sanford a pass for what certainly appears to be deliberately improper conduct.

## V.   <u>CONCLUSION</u>.

For these reasons, both Mr. Sanford and Hueston Hennigan should be disqualified in this case.

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA  94111

Dated: February 7, 2022                    Respectfully submitted,


                                           */s/ Spencer Hosie*
                                           SPENCER HOSIE (CA Bar No. 101777)
                                           shosie@hosielaw.com
                                           DIANE S. RICE (CA Bar No. 118303)
                                           drice@hosielaw.com
                                           DARRELL R. ATKINSON (CA Bar No. 280564)
                                           datkinson@hosielaw.com
                                           HOSIE RICE LLP
                                           505 Sansome Street, Suite 1575
                                           San Francisco, CA 94111
                                           (415) 247-6000 Tel.
                                           (415) 247-6001 Fax

                                           *Attorneys for Plaintiff*
                                           *MASTEROBJECTS, INC.*