Moez M. Kaba, CA State Bar No. 257456
mkaba@hueston.com
Rami Bachour, CA State Bar No. 324844
rbachour@hueston.com
HUESTON HENNIGAN LLP
523 West 6th St., Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:   (888) 775-0898

Douglas J. Dixon, CA State Bar No. 275389
ddixon@hueston.com
Christina V. Rayburn, CA State Bar No. 255467
crayburn@hueston.com
Thomas B. King, CA State Bar No. 241661
tking@hueston.com
Neil G. Anderson, CA State Bar No. 307668
nanderson@hueston.com
HUESTON HENNIGAN LLP
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone:   (949) 229-8640
Facsimile:   (888) 775-0898

Attorneys for Defendant
AMAZON.COM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO COURTHOUSE

| | |
|---|---|
| MASTEROBJECTS, INC.,<br><br>  Plaintiff,<br><br>  vs.<br><br>AMAZON.COM, INC.,<br><br>  Defendant. | Case No. 3:20-cv-08103-WHA<br><br>Judge William Alsup<br>Courtroom: 12<br><br>**DEFENDANT AMAZON.COM, INC.'S REPLY RE: MOTION FOR TERMINATING SANCTIONS DUE TO MASTEROBJECTS' UNCLEAN HANDS**<br><br>Complaint Filed: May 5, 2020<br>Trial Date: October 17, 2022<br>Hearing: April 6, 2022 at 10:00 am |

# **REDACTED**

## I. Introduction

MasterObjects' CEO, Mark Smit, admitted to using Amazon's confidential information to prosecute the Patents-in-Suit. *See, e.g.*, Dkt. 280 at 20. There were two main instances during which that confidential information was (or must have been) conveyed to Mr. Smit: (1) after a June 15, 2011 conversation between Mr. Chatterjee (Amazon's counsel) and Mr. Nelson (MasterObjects' counsel), in which Mr. Chatterjee began explaining why Amazon did not infringe the '326 Patent; or (2) after a July 19, 2011 Webex discussion between counsel for the parties, during which Mr. Chatterjee's colleague presented confidential documents supporting Amazon's non-infringement arguments. *Id.*

MasterObjects disputes whether the June 15, 2011 conversation between counsel was confidential. Although Mr. Chatterjee's declaration regarding that conversation is credible and more consistent with the documentary evidence than MasterObjects' competing declaration, the Court need not even reach the declarations. That is because even MasterObjects does not dispute, nor could it, that the July 19, 2011 presentation was confidential and subject to a use restriction. Specifically, the parties agreed on July 14, 2011 that, at the very least, information shared with MasterObjects during the July 19, 2011 Webex presentation was "confidential and protected as confidential, w[ould] not be used in prosecution, protected under 408, and w[ould] only be used for settlement conversations." Dkt. 278-8 (Chatterjee Decl., Ex. B (email correspondence between N. Chatterjee and W. Nelson)). And, according to MasterObjects' privilege log, between the July 19, 2011 confidential Webex and July 24, Mr. Smit and counsel at Hosie Rice engaged in 39 written communications with MasterObjects' prosecuting counsel, with over 30 of them expressly identifying Amazon as the subject matter. Supp. Rayburn Decl. Ex. 28 (further excerpts from MasterObjects Supp. Privilege Log). (By contrast, in the week before the July 19, 2011 Webex, MasterObjects' privilege log lists only 3 written communications with MasterObjects' prosecuting counsel that identifies Amazon as the subject matter.)

In its opening brief, Amazon noted that, in opposition to Amazon's *precis*, MasterObjects had referenced—but not produced—a July 20, 2011 email from Mr. Nelson to Mr. Smit summarizing the confidential Webex presentation. *Id.* At that point, MasterObjects had quoted a small portion of

that email to the Court as proof that no confidential information had been shared. *See* Dkt. 265 at 2 (Mr. Nelson "specifically said that he could not share the details."). MasterObjects has now produced that email (after Amazon filed its opening brief), which is full of clearly confidential Amazon information. Dkt. 296-24 (Hosie Decl., Ex. J). MasterObjects makes no attempt to address the contents of the July 20 email, which provides documentary proof that Mr. Smit (and patent prosecution counsel) received confidential Amazon information from the Webex that *everyone agrees* was subject to confidentiality and use restrictions.

Thus MasterObjects' assortment of defenses fails. *First*, MasterObjects argues that the patent claims that it pursued before receiving Amazon's confidential information in June 2011 are like the claims that it pursued after June 2011. As set forth below, this is incorrect. *Second*, MasterObjects argues that Mr. Nelson was permitted to convey confidential information to Mr. Smit. Even if so (which MasterObjects has not shown), it is irrelevant. Amazon's primary contention is that Mr. Smit used confidential information to prosecute patent claims in an attempt to target Amazon. *Third*, MasterObjects announces that Amazon misinterprets Mr. Smit's testimony. But MasterObjects could have presented a declaration from Mr. Smit to correct the record in whatever way it saw fit. Tellingly, *it did not do so*. *Finally*, MasterObjects argues that the governing protective order *allowed* Mr. Smit to use Amazon's confidential information to prosecute his patents. But it plainly does not.

And, as described herein, MasterObjects' conduct even in connection with this motion is curious and concerning. For example, as Amazon explained, MasterObjects asserted in a filing with the Court that it had discovered a new tranche of relevant documents—documents sent between Mr. Chatterjee and Mr. Nelson's "personal email account." Dkt. 265 at 1. MasterObjects relied on these purported documents to claim that *Amazon* was "affirmatively misleading this Court." *Id*. But apparently no such documents existed. MasterObjects' opposition does not deny this. Instead, it addresses the prior representation to the Court in two sentences at the end of a footnote: "MasterObjects initially believed that some of these early emails were sent over Mr. Nelson's personal account. On checking, we confirmed that all were sent over the Firm's email." Dkt. 295 at 6, n.1. MasterObjects does not explain why it "initially believed" the emails were sent over Mr. Nelson's personal account, what diligence it performed before making this claim, when it learned

that its representation was inaccurate, or why it did not—as required by this Court—immediately correct the record. *Mohazzabi v. Wells Fargo Bank, N.A.*, 2022 WL 595878, at *3 (N.D. Cal. Feb. 28, 2022); Judge Alsup Supp. CMC Order ¶ 25.

Given the parties' filings, there is no need for an evidentiary hearing. The Court need not resolve whatever factual dispute may exist between Mr. Nelson and Mr. Chatterjee given Mr. Nelson's July 20, 2011 email conveying confidential Amazon information to Mr. Smit. Moreover, MasterObjects claims to want to examine Andrew DeVore, a senior Amazon attorney. But MasterObjects has not identified any relevant information that Mr. DeVore may possess (and Amazon's motion did not rely on Mr. DeVore in any way). To the contrary, MasterObjects' opposition makes clear that Mr. DeVore directed MasterObjects to Mr. Chatterjee for all substantive discussions. Dkt. 295 at 5-6. Finally, MasterObjects does not seek to call Mr. Smit. *Id.* at 3-4. While MasterObjects assumes that *Amazon* would want to call Mr. Smit to an evidentiary hearing, it is Amazon's position that the 30(b)(6) deposition testimony is sufficiently clear (and unrebutted by any declaration).

Amazon respectfully submits that MasterObjects' conduct merits a finding of unclean hands and sanctions, up to and including termination.

## II. Mr. Nelson Conveyed Confidential Amazon Information to Mr. Smit in his Email Dated July 20, 2011

MasterObjects previously asserted that "[o]n July 20, 2011, Mr. Nelson reported at a very high level the settlement discussions to the client. Mr. Nelson specifically said that he could not share the details." Dkt. No. 265 (2/14/22 MasterObjects Letter Brief) at 2. Although MasterObjects waived privilege over and produced other documents before Amazon filed its opening brief, it did not then produce the email reflecting such a report. Apparently, that is because the email (Hosie Ex. J) shows that MasterObjects' CEO received far more Amazon confidential information than was previously disclosed.[1] It also shows that the email was also sent to Martin Fliesler, *MasterObjects'*

---

[1] Amazon apologizes to the Court that the contents of this email are being addressed on reply. Amazon was mindful of this Court's direction that it not save material for reply. *See* Dkt. 272. Accordingly, Amazon expressly requested that MasterObjects produce—before the deadline for Amazon's opening brief—any documents over which it intended to waive privilege for the purposes
(Continued...)

*patent prosecution attorney*, and to William Hassebrock, a MasterObjects consultant. In relevant part, the email reads as follows:

PRIVILEGED AND CONFIDENTIAL

Mark et al.,

[...] █████████████████████████████████

Hosie Decl. Ex. J (7-20-11 W. Nelson email). This description plainly contains Amazon confidential information. And despite the email's self-serving assertion that the author "cannot share…the details," the email goes on to describe far more information than a simple "Amazon does not infringe" position, and more than was conveyed to MasterObjects before the parties undisputedly agreed to the July 14, 2011 written confidentiality agreement. *Compare* Hosie Ex. J to Exs. E, F, G, I. For example, none of the pre-July 14, 2011 communications suggest: (1) ████████ ███████████████████████████████████; (2) ████████ ██████████████████████; (3) █████████████████████████ ███████; or (4) █████████████████████████████████. All of this is confidential Amazon information that Mr. Nelson learned during a Webex session that was subject to very clear use restrictions. *See* Chatterjee Decl., Ex. B.

---

of this motion. Ex. 29 (2022/02/16 Rayburn Eml. to Hosie). MasterObjects chose to not to produce Hosie Decl. Ex. J until later. Rayburn Decl. ¶ 10.

- 4 -

Mr. Nelson also wrote that:

[REDACTED]

*Id.* This, too, is confidential information that had not been shared with Mr. Smit previously. Collectively, these paragraphs undermine MasterObjects' claim that only Amazon's "basic noninfringement position" was shared with Mr. Smit. Dkt. 295 at 20.

MasterObjects argues that its counsel was allowed to share Amazon confidential information with Mr. Smit. *See* Dkt. 295 at 15-16. That may be so, *if* Mr. Smit had signed the "Acknowledgement and Agreement to be Bound" required by the Model Protective Order for "the officers, directors, and employees" of a party receiving confidential information. Dkt. 295 at 15 (quoting Rayburn Decl., Ex. 7, § 7.2(b)). But MasterObjects has not shown that Mr. Smit did so. Nor has MasterObjects shown that Mr. Fliesler, was on MasterObjects' board, did so. Nor has MasterObjects made any attempt to explain why it was proper for Mr. Hassebrock—who was *not* then an officer, director, or employee of MasterObjects, Dkt. 295 at 6—to receive this information. At any rate, regardless of whether Mr. Smit was entitled to receive Amazon's confidential information, he was *not* entitled to use it to prosecute further patents. To the contrary, MasterObjects' counsel had agreed that it was "confidential and protected as confidential, w[ould] not be used in prosecution, protected under 408, and w[ould] only be used for settlement conversations."[2] Chatterjee Decl., Ex. B.

In light of the foregoing, Mr. Smit's testimony that he received Amazon confidential information could not be more clear. *See* Dkt. 278-9 (Rayburn Decl., Ex. 1) at 39:19-24.

---

[2] Indeed, Mr. Nelson, in a July 19, 2011 internal memorandum summarizing the Webex presentation, identified the information therein as "HIGHLY CONFIDENTIAL – CANNOT BE SHOWN TO CLIENT." Dkt. No. 295 (Hosie Decl., Ex. K). This memorandum is evidence that MasterObjects understood that information shared during the Webex presentation was highly confidential and, as such, that the prosecution bar of the Model Protective Order attached to it.

MasterObjects' claims that Amazon misinterpreted Mr. Smit's testimony thus fall flat. For example, MasterObjects argues that Mr. Smit only "personally thought that he should not publicize information he learned through a privileged communication with his company's counsel." Dkt. 295 at 24. That is not what Mr. Smit testified. Mr. Smit was asked whether Amazon's information "**had been shared with Hosie Rice confidentially**." Rayburn Decl., Ex. 1 at 39:19-24 (emphasis added). To that, he responded that it was his "understanding that that information should be kept confidential, yes." *Id*. There is no reasonable basis to interpret this testimony in the way MasterObjects now attempts to.

### III. MasterObjects Used Amazon's Confidential Information To Change its Patent Prosecution Approach

At the Court's request, Amazon has twice addressed how MasterObjects' claiming strategy changed after 2011. *See* Dkt. 263, Dkt. 280 (Opening Brief) at 13-18. As Amazon explained, every one of MasterObjects' pre-2011 patent claims required that the claimed system be able to "access *both* a content source and a cache to gather responses to user queries." Dkt. 263 at 1. This is because—as explained by MasterObjects' pre-2011 patent claims—the claimed cache was built by making copies of information previously gathered from the content source in response to user queries. *See* Dkt. 263 at 2 (citing Dkt. 252-26 at Claim 1). This is important, because Amazon's accused "cache"—which is not a cache at all—is not built in this way. Instead, as Mr. Nelson told Mr. Smit on July 20, 2011, Amazon's autocomplete system uses a free-standing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Hosie Decl., Ex. J. That database, which is not a cache, is not built by saving copies of prior autocomplete results from an underlying content database; ▮▮▮▮▮▮▮▮▮▮▮

Unable to respond to Amazon's argument, MasterObjects attacks a straw man:

> [Amazon's] nomenclature is confusing and obfuscates the issue. The relevant question is not whether a claim refers to both a cache and a content source …. What matters is whether MasterObjects, prior to June 2011, claimed an invention that covers a system that does not check an underlying data source on a cache miss (one step).

Dkt. 295 at 17. But Amazon made very clear that one-step/two-step was *not* the issue. *See* Dkt. 263 at 2 ("MasterObjects argues that [Claim 1 of the '529 Patent] does not require 'a two-step process.' That is not the point. This claim requires a server that queries *either* a cache *or* a content source, and thus has access to both."). While it is true that Amazon does not practice two-step claims (such as

those in the '326 and '529 Patents), it *also* does not practice claims that in any way require that the claimed system be able to query both a cache and an underlying content database for autocomplete responses (whether in one-step, two-step, or otherwise).[3]

Indeed, MasterObjects' explanation of original Claim 5 of the '529 Patent supports Amazon. As MasterObjects argues, that claim would "require that a 'content engine' be searched at least once. The engine, and not a cache, could be searched on the first query, and only the cache searched thereafter." Dkt. 295 at 18. This is Amazon's point. MasterObjects' claims required that the system access a content engine "at least once," to build the cache. Any claims that can be read to "require that a 'content engine' be searched at least once" in response to a user query do not read on Amazon's system. And pre-2011 claims that *do* have that requirement cannot support post-2011 claims that MasterObjects argues do not have that requirement.

Claims 54 and 60 of the '529 Patent (as of October 2007), on which MasterObjects relies, similarly support Amazon. Dkt. 295 at 18. The independent claim (Claim 54) recites using "user input … to query data from one or more content sources." *Id.* The dependent claim (Claim 60) then recites "cach[ing] the result data received from said content sources and us[ing] said cached result data as a response to later client requests." *Id.* This describes the same process as original Claim 5: at least once, the autocomplete system needs to query an underlying content engine for data responsive to a user query. Amazon's autocomplete system does not do this.

In its Opposition, MasterObjects makes a confusing argument that appears to assert that Amazon has made concessions. To be clear, Amazon does *not* concede that a cache can be a content source and be pre-built. The plain claim language of Claims 54 and 60 makes clear that the "content source" of claim 54 is different from the "cache" of Claim 60. MasterObjects' attempt to explain its claims as discussing a "cache" that can be a "content source" and "built from the previous days cache," Dkt. 295 at 18, is incomprehensible. There is simply no disclosure in the parent specification of a pre-built cache, or a cache that is built from a previous days' cache, or caches that are built on

---

[3] To be clear, Amazon believes that MasterObjects' current claims require the ability to query both a cache and an underlying content database, as explained at length in Amazon's claim construction brief. But it is also apparent that, after learning Amazon's confidential information, MasterObjects attempted to craft patent claims to obfuscate (though it was unable to eliminate) that requirement.

1  separate days.  This argument demonstrates the problem with MasterObjects' strategy in this case.
2  Arguments like this arose only *after* MasterObjects learned—in July 2011—that Amazon's free-
3  standing autocomplete database is nothing like the cache contemplated by MasterObjects' patents.

4        Finally, MasterObjects points to as-issued Claim 1 of the '529 Patent, faulting Amazon for
5  calling it a "cache and content source" claim, when the language of the claim recites retrieving
6  content from a cache *or* a content source.  Dkt. 295 at 19.  But Amazon has already explained that,
7  as issued, Claim 1 recites a system with the ability to retrieve content from a cache *or* a content
8  source.  Additionally, other elements of this claim require the cache to be built from information
9  previously retrieved from the content source.  *See* Dkt. 295 (Hosie Decl., Ex. O) (requiring "a
10 content-based cache . . . which stores previous queries and corresponding result sets previously
11 executed by the system, and which includes within its result sets content or other information
12 previously retrieved from the server or one or more content sources in response to the previous
13 queries.").  As such, the system of the '529 patent necessarily must have access to both a cache *and*
14 a content source.  *See* Dkt. 263 at 2-3 (gathering MasterObjects admissions on this point); *see also*
15 *Ameranth, Inc. v. Menusoft Systems Corp.*, 2010 WL 1610079, *6-*7 (E.D. Tex. 2010).

16       Amazon's opening brief explains that MasterObjects never sued Amazon on the '529
17 Patent—presumably because MasterObjects agrees that Amazon does not practice the "cache or
18 content source" elements.  Dkt. 280 at 15.  MasterObjects responds that it concluded that Amazon
19 did not infringe the '529 Patent for a different reason: an adverse claim construction ruling by Judge
20 Hamilton on a different claim limitation.  Dkt. 295 at 19.  But that claim construction ruling issued
21 on May 28, 2013, *after* MasterObjects had apparently drafted, and elected not to file in late 2012, a
22 second complaint against Amazon.  *See MasterObjects, Inc. v. Google*, case No. 4:11-cv-01054,
23 Dkt. No. 153 (Claim Construction Order) (N.D.Cal. May 28, 2013); Dkt. 280 (Rayburn Decl., Ex.
24 14) (MasterObjects privilege log entries 2511-12, 2520-21, 2523-24, dated December 6-7, 2012).

25       MasterObjects argues that its internal emails reflect that its advisors thought that Amazon
26 infringed the '529 Patent.  Dkt. 295 at 20.  But those emails reflect what MasterObjects' advisors
27 thought *in May 2011*—before learning confidential details about the workings of Amazon's system.
28 Notably, MasterObjects chose to selectively waive privilege over those emails, and not over any

emails that discuss why MasterObjects ultimately did not assert the '529 Patent.

It is thus evident that—as Mr. Smit admitted, Rayburn Decl., Ex. 1 at 32:4-22, 29:17-23—MasterObjects adapted its patent claims to account for Amazon's confidential information. MasterObjects has unclean hands, and its patents should be held unenforceable against Amazon.[4]

### IV. The Protective Order Does Not Justify MasterObjects' Misuse of Amazon's Confidential Information

MasterObjects argues that the Protective Order, in principle, permitted counsel to share Amazon confidential information with Mr. Smit. Dkt. 295 at 15-16. But the primary issue is Mr. Smit's violation of the Protective Order's "sole use" provision. *See* Dkt. 280 (Rayburn Decl., Ex. 7) § 7.1. This "sole use" clause is comprehensive and does not contain a carveout that would permit MasterObjects to use confidential information in patent prosecution or for any other unauthorized purpose. MasterObjects invokes the canon that the "specific governs over the general" to argue that the "sole use" provision is superseded by the prosecution bar. Dkt. 295 at 15. MasterObjects has no authority for such a remarkable claim because the general/specific canon does not apply here. That canon "provides that when two conflicting provisions cannot be reconciled, the more specific provision should be treated as an exception to the general rule." *In re Border Infra. Env't Litig.*, 915 F.3d 1213, 1225 (9th Cir. 2019). Here, the sole use provision and the prosecution bar are easily reconciled. The sole use provision prohibits *all* unauthorized use of protected information, regardless of whether it is confidential or highly confidential. Rayburn Decl., Ex. 7, § 7.1. The prosecution bar, in turn, prohibits persons who receive highly confidential information from even *participating* in patent prosecution for some time, regardless of whether they use the material or not. *Id.* § 8. These provisions easily fit together and have different purposes. *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373 (Fed. Cir. 2010).[5] MasterObjects cannot simply disregard the sole use provision.

---

[4] To the extent MasterObjects' argument is that its prior patent claims are close enough to the patents-in-suit that it does not matter if MasterObjects misused Amazon's confidential information, this argument fails. The *Gilead* district court expressly rejected the argument that "[defendant] did not suffer any harm because [patent owner] did not obtain patent coverage that it would not have otherwise obtained." *Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 WL 3143943, at *36 (N.D. Cal. June 6, 2016); *aff'd Gilead Scis., Inc. v. Merck & Co. Inc.*, 888 F.3d 1231 (Fed. Cir. 2018).

[5] Because the sole use provision of the Protective Order governs here, it is irrelevant whether
(Continued...)

Even if MasterObjects were correct that the Protective Order did not prohibit MasterObjects from using Amazon's confidential information to prosecute its patents, that would not exonerate MasterObjects. MasterObjects was also constrained by its promises that Amazon's confidential information "will not be used in prosecution" and "will only be used for settlement conversations." Chatterjee Dec. Ex. B. As *Gilead* shows, even without a Protective Order, breaching a confidentiality agreement can be sufficient for unclean hands. *Gilead Scis., Inc*, 2016 WL 3143943, at *27.

## V.  Amazon's Motion Accurately Presents Mr. Smit's Deposition Concessions

MasterObjects quotes Mr. Smit's deposition for the proposition that his changed claiming strategy was based, not on a desire to target Amazon, but instead on a desire to claim only the "core" invention. *See* Dkt. 295 at 21-22. This argument fails. *First*, immediately after claiming that the purpose of the amendments was to get at the "core" MasterObjects invention, Mr. Smit agreed that another purpose of the amendments was to "not have the same problem that, quote, enabled Amazon to get out of infringement." Dkt. No. Dkt. 278-9 at 28:15-29:23. *Second*, as Amazon explained in its opening brief, the cache itself is not the "core" invention. *See* Dkt. 280 at 21. ▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *certainly* is not the "core" invention of the parent application. As set forth in Amazon's claim construction briefing, the only cache disclosed in MasterObjects' patents is one built via system accesses to an underlying content source. *Third*, the only other example that MasterObjects provides of removing claim language to seek the "core" invention is another change MasterObjects made in an attempt to better cover accused infringers after a prior litigation failed. Specifically, MasterObjects argues that it changed its claim language to avoid Judge Hamilton's claim construction order, which resulted in a non-infringement judgment in that case. *See* Dkt. 295 at 23. But, as Amazon has argued in its claim construction brief, Judge Hamilton's claim construction reflects MasterObjects' *true* invention as to that claim

---

MasterObjects made use of Amazon's confidential information before or after the two-year prosecution bar period. *See* Dkt. 295 at 2-3. Even so, MasterObjects did so before. A claim with "cache" claim language like that of the '628 Patent—asserted here—first appeared in the '024 patent application in July 2012, approximately one year after MasterObjects received Amazon's confidential information. Ex. 30 (7-23-2012 '024 patent application preliminary amendment Claim 34 (reciting that "the server caches query results and subsequently determines results by looking up the query in said cache so that it can avoid performing a query for the same input on a data source or looking up said query in a second cache").

limitation. MasterObjects' changed claiming strategy as to that limitation was not to seek the "core" invention—it was to unreasonably broaden its claims to pursue further litigation.

## VI. MasterObjects' Conduct in Connection With This Motion

As described below, MasterObjects' conduct in connection with this pending motion is also puzzling. *See Gilead*, 888 F.3d 1231, 1244.

*First*, in its opening brief, Amazon identified MasterObjects' representation to the Court that it had identified a new category of relevant documents, supposedly from Mr. Nelson's personal email address, that purportedly: (1) warranted an additional filing before this Court; and (2) showed that *Amazon* was "misleading this Court." *See* Dkt. 280 at 23-24 (quoting Dkt. 265). MasterObjects does not dispute that it had no such new documents and that its filing in fact quoted communications that Amazon had produced. *See* Dkt. 280 at 23-24. And it admits that there are not, and apparently never were, any emails sent between Mr. Chatterjee and Mr. Nelson using Mr. Nelson's personal email account. MasterObjects has not explained or justified its earlier incorrect assertion, addressing it in two short sentences at the end of a lengthy footnote. *Compare* Dkt. 295 at 6, n.1 with Dkt. 265. *See United States v. Thoreen*, 653 F.2d 1332, 1340–41 (9th Cir. 1981).

*Second*, on February 16, 2022, Amazon requested that MasterObjects produce any documents over which MasterObjects intended to waive privilege so that Amazon could address them, as the Court requested, in its opening brief. MasterObjects produced a July 7, 2011 email from Will Nelson to Mark Smit, with a large unexplained gap in the text:

> Subject: FW: MasterObjects
> Date: Thursday, July 7, 2011 at 9:06:37 PM Pacific Daylight Time
> From: William Nelson
> To: Spencer Hosie, George Bishop, Diane Rice
>
> [REDACTED]

Rayburn Decl., Ex. 16. Noting the unusual gap (but no stamp indicating any redaction), Amazon asked MasterObjects whether any material had been redacted. Ex. 31 (2-16-22 4:34pm C. Rayburn

email). In response, MasterObjects wrote "Only thing redacted was a Saturday print date[.]" *Id.* (2-16-22 4:43pm S. Hosie email). Amazon promptly requested a native copy of the email to corroborate this claim. *Id.* (2-16-22 8:13pm C. Rayburn email). MasterObjects did not respond, so Amazon renewed it by letter on February 21. Ex. 32 at 3 (2-21-22 T. King letter). Amazon's February 21 letter drew counsel's "attention again to what appears to be an unusual gap between the address and the body text of MO_049740." *Id.* at 2. It asked that MasterObjects "recheck this document[.] This email starts abruptly, with none of the customary pleasantries and no introduction to give context." *Id.* at 2-3. On February 23, MasterObjects responded "Of course, we will produce in native format the doc you flagged. . . .We redacted nothing." Ex. 33 (2-23-22 S. Hosie email).

MasterObjects never produced a native version of this email. Ex. 34 at 1 (3-14-22 12:58pm C. Rayburn email). Instead, 2 weeks after Amazon raised the issue, and after Amazon had filed its opening brief, on March 2, 2022, MasterObjects produced, without explanation, a "tranche" of documents that included a new version of the email. Ex. 36; Supp. Rayburn Decl. ¶ 10. That version—a copy of which is attached as Exhibit I to Mr. Hosie's Declaration—shows what Amazon had suspected, that the version of the document sent to Amazon on February 16, 2022 was in fact missing text that appeared on the original. The missing text described Amazon's reaction to MasterObjects' then-pending patent claims.

> Saturday, February 12, 2022 at 21:13:29 Pacific Standard Time
>
> **Subject:** FW: MasterObjects
> **Date:** Thursday, July 7, 2011 at 9:06:37 PM Pacific Daylight Time
> **From:** William Nelson
> **To:** Spencer Hosie, George Bishop, Diane Rice
>
> So here is the upshot.
>
> [redacted]

Hosie Decl. Ex. I. The originally missing paragraph supports Amazon's argument that Amazon was not concerned about the patent claims that MasterObjects had pending in 2011. *See, e.g.*, Dkt. 280

1  at 17-18.  As set forth in the email, Amazon believed it had a non-infringement argument as to the
2  "two-step" claims, and the only other type of claims that this email identifies were "no cache"
3  claims—not the "single cache" claims at issue now.  *See* Dkt. 280 at 17.

4       Prior to filing this reply, Amazon asked MasterObjects to explain the discrepancy between
5  the version it sent Amazon on February 16, 2022 and the version produced on March 2, 2022.
6  MasterObjects stated that this was "a pure print error."  Ex. 34 at 4 (3-14-22 11:13am S. Hosie email).
7  That is, "[w]hen printed, this document dropped the first paragraph."  Ex. 35 at 1 (3-14-22 8:01am
8  S. Hosie email).  MasterObjects' counsel demonstrated this printer issue they were experiencing to
9  Amazon's counsel, and Amazon accepts MasterObjects' representation.  However, it is still unclear
10 why MasterObjects: (1) did not affirmatively inform Amazon that its earlier production was
11 somehow errant, (2) waited nearly two weeks (and until after Amazon filed its opening brief) to
12 correct the production when Amazon had promptly drawn the issue to MasterObjects' attention, and
13 (3) has not obtained the native version of the email from Mr. Nelson, despite stating on February 23,
14 2022 that it would produce it.  Ex. 33.

15      *Third,* as explained above in Section II, MasterObjects' *precis* opposition characterized a
16 snippet of Hosie Decl., Exh. J, but the email itself was not produced until February 16.  *See* Dkt. 265
17 at 2.  MasterObjects referenced the email to assert that Mr. Nelson did not convey confidential
18 information to Mr. Smit, when in fact a full review of that document, which Amazon received after
19 it filed its opening brief, makes clear that he did.  *Id.*

20 **VII.**   **<u>Amazon Has Shown Clear and Convincing Evidence of MasterObjects' Unclean Hands.</u>**

21      Amazon has shown that MasterObjects engaged in misconduct having an immediate and
22 necessary relationship to this litigation: (1) MasterObjects received Amazon confidential
23 information; and (2) MasterObjects used that information in prosecution.  MasterObjects' unclean
24 hands stem from Mr. Smit's decision to "enhance [MasterObjects'] position regarding legal rights
25 that are important to the litigation," and to do so while using Amazon's confidential information to
26 influence his decisions.  *Gilead*, 888 F.3d at 1240.

27      MasterObjects argues that a trial or evidentiary hearing is necessary to resolve disputed
28 factual issues, in particular the dispute between Mr. Chatterjee and Mr. Nelson regarding the

confidentiality of the pre-July 14, 2011 communications. But any such factual dispute is immaterial considering the undisputed evidence that Mr. Smit received designated Amazon confidential information during the 2011 lawsuit.[6] Mr. Smit has already provided testimony in an appropriate evidentiary form, FRCP 32(a)(3), and further testimony from him is not required. If Mr. Smit had further helpful testimony to provide, MasterObjects would have submitted his declaration. Amazon respectfully submits that the Court should issue sanctions based on the parties' written submissions and the documentary evidence they have provided.

## VIII.  MasterObjects' Selective Waiver is Improper

As one final point, Amazon objects to MasterObjects' selective waiver of privilege over documents to attempt to contradict its CEO's testimony regarding the confidentiality of the information he received. Although 30(b)(6) testimony is not irrebuttable (*see* Alsup Supp. CMC Order ¶ 32(d)), that does not mean that a party can use improper means to rebut it. FRE 502(a) states that a party who intentionally waives privilege over one or more communications also waives privilege over other documents that "concern the same subject matter" and "ought in fairness to be considered together." Here, although MasterObjects has selectively waived privilege over some documents, it is still withholding dozens of documents concerning the 2011 Amazon lawsuit and its communications with prosecuting counsel after receiving Amazon confidential information. *See*

---

[6] To be clear, Mr. Chatterjee's declaration is credible and consistent with the documentary record. For one thing, Mr. Chatterjee has no interest in this issue. Mr. Chatterjee explains his usual practice regarding informal settlement communications, and why, in particular, he applied that practice in this case. His written email, Chatterjee Decl., Ex. B, confirms how he talks about the confidentiality of settlement negotiations: i.e., communications are to be "confidential and protected as confidential, will not be used in prosecution, protected under 408, and will only be used for settlement conversations." The fact that his email explicitly refers to "our discussions" being protected, when only *one* further discussion (the Webex meeting) was contemplated, confirms that he was covering (and had previously covered) all the parties' settlement discussions with this language. *Id.*; *see also* Chatterjee Decl. ¶ 14 ("[REDACTED]. In contrast, Mr. Nelson's declaration seems based on the idea that, because he only wrote "Rule 408" on his contemporaneous emails (the few over which MasterObjects has chosen to waive privilege), that must have been the extent of the agreement. Far more likely, given Mr. Chatterjee's testimony, is the fact that Mr. Nelson used "Rule 408" as shorthand for the parties' oral agreement. Indeed, we now know that Mr. Nelson's designation practices with respect to Amazon's confidential information were incomplete. For example, in his July 20, 2011 email to Mr. Smit, Mr. Nelson did *not* convey to Mr. Smit the full scope of the parties' agreement regarding how the "CONFIDENTIAL" information conveyed therein could (and could not) be used. *See* Hosie Decl., Ex. J.

Dkt. 280, Rayburn Decl., Ex. 18 (MasterObjects Supplemental Privilege Log) at entries 3, 118-127, 142, 155-156, 263, 265-266, 276-278, 308-311, 321-322, 374, 417-419, 431-32, 434, 436-441, 444, 446-447, 452-475, 477-483, and 633, and likely others).  These are *Amazon-related* entries, on subjects such as "RE: amz", "amz call," "Email regarding Amazon," etc. *Id.*  Contrary to what MasterObjects claims, these do not appear to be communications regarding other topics such as the co-pending Google or Microsoft cases.  *See* Dkt. 295 at 21-22.  MasterObjects should not be permitted to cherry-pick its waiver to create a factual question regarding whether its CEO received and used confidential information.

MasterObjects' selective waiver[7] is especially impactful given that between July 19 and July 24, 2011, MasterObjects' privilege log reveals dozens of post-Webex presentation Amazon-related communications between Mr. Smit, his litigation counsel, and prosecution counsel. Ex. 28 (excerpts from MasterObjects Supp. Privilege Log).  MasterObjects has not produced the vast majority of these communications.  And MasterObjects has offered no explanation for this flurry of activity between MasterObjects and its prosecution counsel on and after MasterObjects received Amazon's confidential information on the July 19 Webex.  MasterObjects' failure to either produce these documents or explain the volume of communications is telling given that: (1) in the week before the July 19, 2011 Webex meeting, MasterObjects' privilege log reveals only 3 Amazon-related emails between Mr. Smit, his litigation counsel, and prosecution counsel, *id*.; and (2) as MasterObjects' litigation counsel acknowledged in an internal, July 7, 2011 email, one of the purposes of the July 19, 2011 meeting was to provide information that "███████████████████████████████████████████" Hosie Decl. Ex. I.

---

[7] To date, the documents that MasterObjects has produced pursuant to its privilege waiver are: (1) three documents produced on February 16, 2022; (2) nine documents produced on March 2, 2022 two of which were versions of the first three; and (3) five previously unproduced communications with its Opposition brief (for a total of 15 waived documents).  On March 2, 2022, counsel for MasterObjects stated that the production of that date was only "the first tranche of the waived documents."  Ex. 36 (3-2-22 S. Hosie email).  Aside from the five additional documents provided with its Opposition, MasterObjects has not produced any other waived documents.

| | | |
|---|---|---|
| Dated: March 14, 2022 | | HUESTON HENNIGAN LLP |

By: */s/ Christina V. Rayburn*
Christina V. Rayburn

Attorneys for Defendant
AMAZON.COM, INC.