# EXHIBIT 32

THOMAS KING

tking@hueston.com
D: 949287 5940
T: 949 229 8640
F: 888 775 0898

620 Newport Center Drive
Suite 1300
Newport Beach, CA 92660

# HUESTON HENNIGAN LLP

February 21, 2022

**VIA E-MAIL**

Spencer Hosie
505 Sansome Street
Suite 1575
San Francisco, CA 94111

Dear Spencer:

We write concerning your waiver of privilege over three communications relative to the 2011 MasterObjects/Amazon lawsuit. As you know, MasterObjects waived privilege over these documents, among other things, to support its claim that Amazon did not adequately protect its information in 2011. *See* Dkt. No. 265.

Having waived privilege over these documents, MasterObjects must now turn over all other communications on the same subject matter. FRE 502(a) states that an intentional waiver extends to undisclosed communications where "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." This rule requires production of significant amounts of additional documents.

There is no question that MasterObjects made an intentional disclosure in a federal proceeding. The only question is what subject matter is covered by the communications and whether additional communications should, in fairness, be considered with these waived documents.

As to the subject matter element, the waived communications concern (1) the Amazon/MasterObjects settlement discussions; (2) MasterObjects' (and its counsel's) understanding of how Amazon's product works; and (3) MasterObjects' patent strategies (both before and after the Amazon/MasterObjects settlement discussions).

The "fairness" element is intended to prevent selective waivers. Here, however, MasterObjects has made a *highly* selective waiver, producing only three of the dozens of emails on these topics shown on its privilege long. As a result, MasterObjects will need to provide all document in is possession regarding topics (1) and (2). We cannot make a comprehensive list of all such documents, but it will include items from MasterObjects' June 2011 – November 2011 privilege log, including items 1, 3, 112-127, 142, 152, 154-156, 263, 265-266, 276-278, 308-311, 321-322, 337-340 (likely), 345-350 (likely), 352 (likely), 374, 417-419, 431-32, 434, 436-441, 444, 446-447, 452-475, 477-483, and 633. These are just the communications that were sent to Mr. Smit and thus part of the log. In addition, the log also contains many generic entries that may have bearing on this subject matter that would also need to be produced (but which can only be identified by MasterObjects). There are also unlogged documents such as communications among Hosie Rice attorneys that must also be considered in fairness with the documents

# HUESTON HENNIGAN LLP

over which you waived privilege. For whatever information is produced on any of the topics, we will also need a deposition of Mr. Smit and/or other pertinent witnesses.

Relative to MasterObjects' patent claiming strategy (discussed in MO_049740), we do not believe that *all* privileged documents need to be considered in connection with MasterObjects' disclosure. However, any documents concerning MasterObjects' claiming strategies and any documents that were shared with MasterObjects' patent prosecutors in 2011 and 2012 would appear to be fair game, as would prosecution-related documents that, at any time after June 2011, mention Amazon or are expressly or implicitly directed against Amazon.

The need to produce additional documents due to subject matter waiver is also supported by post-FRE 502 caselaw. For example, in *Ironburg Inventions Ltd. V. Valve Corp.*, putting some privileged information into play to protect against an inequitable conduct claim (a form of unclean hands) resulted in a subject matter waiver. 2018 WL 4281531 (W.D. Wash., Sept. 7, 2018); *see also Pall Corp., v. Cuno Inc.*, 268 F.R.D. 167, 169 (E.D.N.Y. 2010) (holding that the party "asserting privilege cannot be permitted, on the one hand, to argue that it acted in good faith and without an improper motive and then, on the other hand, to deny the [defendant] access to the [privileged materials]" especially where those materials "are potentially capable of undermining [the patentee's] assertions of good faith and are therefore relevant to [the defendant's] inequitable conduct counterclaim.").

If you disagree and believe that a meet and confer regarding the appropriate scope of the subject matter waiver here would be productive (or if you have a basis for asserting that *no* further waiver is appropriate) please let us know.

We also want to draw your attention again to what appears to be an unusual gap between the address block and the body text of MO_049740, as shown below:

> **Subject:** FW: MasterObjects
> **Date:** Thursday, July 7, 2011 at 9:06:37 PM Pacific Daylight Time
> **From:** William Nelson
> **To:** Spencer Hosie, George Bishop, Diane Rice
>
> He stated that they are concerned about the discoverability of Rule 408 communications after ResQNet, so Amazon is antsy about how to do this. So he proposed that they could create a webex, or have us over in person, to view a declaration from an AMZ engineer and two pieces of evidence that predate the patent that would make the operation of their system clear to us.

We would ask that you and Mr. Carroll recheck this document, This email starts abruptly, with none of the customary pleasantries and no introduction to give context. Please check the gap to see what is missing

**HUESTON HENNIGAN LLP**

in that space.  Privilege has been waived so it needs to be produced along with the rest of the document, even (or perhaps especially) if it is just a "printed on" date.

We also renew our request (made February 16, 2021) that you produce all three emails in their original native format (presumably .eml but possible some other format), and let us know whose inbox they came from.  If, as you claimed, there was no redaction, producing the .eml files will only help prove your point and put this issue to rest.  But you must admit that if you were on the other side of the issue looking at this document, you would be skeptical and insist on objective verification of a claim by counsel that only a "printed on" date had been redacted from the space between the address block and the text body, particularly since the other documents do not have this unexplained gap.

Sincerely,

/s/ Thomas King
Thomas King