Moez M. Kaba, CA State Bar No. 257456
mkaba@hueston.com
Rami Bachour, CA State Bar No. 324844
rbachour@hueston.com
Julia Haines, CA State Bar No. 321607
jhaines@hueston.com
HUESTON HENNIGAN LLP
523 West 6th St., Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:   (888) 775-0898

Douglas J. Dixon, CA State Bar No. 275389
ddixon@hueston.com
Christina V. Rayburn, CA State Bar No. 255467
crayburn@hueston.com
Neil G. Anderson, CA State Bar No. 307668
nanderson@hueston.com
Thomas B. King, CA State Bar No. 241661
tking@hueston.com
Justin Sorensen, CA State Bar No. 324817
jsorensen@hueston.com

HUESTON HENNIGAN LLP
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone:   (949) 229-8640
Facsimile:   (888) 775-0898

Attorneys for Defendant
AMAZON.COM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO COURTHOUSE

| | |
|---|---|
| MASTEROBJECTS, INC.,<br><br>    Plaintiff,<br><br>    vs.<br><br>AMAZON.COM, INC.,<br><br>    Defendant. | Case No. 3:20-cv-08103-WHA<br><br>Judge William Alsup<br>Courtroom: 12<br><br>**DEFENDANT AMAZON.COM, INC.'S RESPONSE TO REQUEST FOR INFORMATION RE PROTECTIVE ORDER FOR 2011 LITIGATION, ECF 353**<br><br>Complaint Filed: May 5, 2020<br>Trial Date: October 17, 2022 |

Amazon.com, Inc. ("Amazon") hereby responds to the Court's request for information, ECF 353. The Court's request for information is directed to a July 20, 2011 email in which Attorney Nelson summarizes for his client, Mr. Smit, what he learned about Amazon's autocomplete system during what all sides agree was a confidential July 19, 2011 Webex meeting between attorneys for the parties. The Court has asked why that email states that it is providing information only at a "high level." ECF 353. The Court has asked whether Mr. Smit was not then entitled to receive Amazon's confidential information. *Id.* In particular, the Court has asked the parties whether Mr. Smit had at that time signed onto the protective order for the 2011 litigation. *Id.*

The only explanation from MasterObjects on this topic to date appears in the signed declaration of Mr. Nelson submitted in response to Amazon's motion for terminating sanctions:

[REDACTED]

ECF 295-23 (emphasis added). This explanation, [REDACTED] makes little sense.

This explanation is also contradicted by the strong language Mr. Nelson used in the more detailed summary of the July 19, 2011 Webex that he distributed to his legal team on the same day. In that more detailed summary, Mr. Nelson wrote: [REDACTED] ECF 345-2 (Ex. A to Amazon's Surreply ISO Motion for Terminating Sanctions) at 1. This language suggests that, during the Webex meeting itself, Amazon conveyed to Mr. Nelson that the Amazon documents shown during that meeting were Highly Confidential under the Model Protective Order then in effect. This would make sense, given the highly detailed, highly confidential nature of the documents shown. *See* ECF 344-3 (Ex. A to Amazon's Surreply) at 2 (reproducing a snip of an Amazon document); ECF 344-4 (Ex. B to Amazon's Surreply) (underlying Amazon document).

Amazon has previously raised the question of whether Mr. Smit had signed onto the

protective order for the 2011 litigation:

> MasterObjects argues that its counsel was allowed to share Amazon confidential information with Mr. Smit. *See* Dkt. 295 at 15-16. That may be so, *if* Mr. Smit had signed the "Acknowledgement and Agreement to be Bound" required by the Model Protective Order for "the officers, directors ,and employees" of a party receiving confidential information. Dkt. 295 at 15 (quoting Rayburn Decl., Ex. 7, § 7.2(b)). But MasterObjects has not shown that Mr. Smit did so. Nor has MasterObjects shown that Mr. Fliesler, [who] was on MasterObjects' board [and also received the July 20, 2011 email] did so. Nor has MasterObjects made any attempt to explain why it was proper for Mr. Hassebrock—who was *not* then an officer, director, or employee of MasterObjects, Dkt. 295 at 6—to receive this information.

ECF 305-3 (Amazon's Reply re Motion for Terminating Sanctions) at 5:11-22. MasterObjects has, to date, never: (1) produced any protective order signed by Mr. Smit, or (2) represented that Mr. Smit signed such a protective order. In fact, when Amazon asked Mr. Smit, during deposition, whether he had signed a protective order for the 2011 case,



5/4/2022 Smit Tr. at 57:9-13.

Thus, the most likely explanations for the framing of Mr. Nelson's email are: (1) Amazon had expressed to Mr. Nelson that the information was Highly Confidential, rather than just Confidential, under the Model Protective Order; (2) Mr. Smit (and Mr. Fliesler and Mr. Hassebrock) had *not* signed the relevant protective order undertaking; or (3) both. Either way, the July 20, 2011 email would be improper. The then-governing Model Protective Order did not allow Highly Confidential information to be distributed to the opposing party's CEO. *See* ECF 280-9 (2011 Interim Model Protective Order) § 7.3. Nor did it allow the distribution of Confidential information to a person who had not signed the protective order. *Id.* § 7.2. And, as Amazon has explained, Mr. Nelson's July 20, 2011 email to Mr. Smit includes important Amazon confidential information that Mr. Nelson only obtained via the Webex meeting. *See* ECF 305-3 (Amazon's Reply ISO Motion for

- 2 -

Terminating Sanctions) at 3-5; ECF 345-1 (Amazon's Surreply ISO Motion for Terminating Sanctions) at 1-2. Finally, Mr. Smit has himself testified that he received Amazon confidential information from Mr. Nelson and used it to guide the prosecution of the Patents-in-Suit. ECF 279-3 (Amazon's Motion for Terminating Sanctions) at 7-10.

Even if Mr. Smit *had* signed the governing protective order, and the information shared during the Webex meeting *was* designated only Confidential, Mr. Nelson may have (unsuccessfully) attempted to limit the information conveyed because he knew that the July 19, 2011 Webex meeting was subject to more constraints than just the district's Model Protective Order. Specifically, the parties had agreed that the information conveyed during that meeting was "confidential and protected as confidential, will not be used in prosecution, protected under 408, and will only be used for settlement conversations." ECF 278-8 (Ex. B to Chatterjee Decl. ISO Motion for Terminating Sanctions).

As of June 2011, Mr. Nelson was aware that Mr. Smit was actively prosecuting patents in the same patent family. *See, e.g.*, ECF 279-3 at 14 (graphic of patent family, depicting multiple live patent prosecutions as of June 2011). As such, he may have been trying to avoid a situation where—contrary to the parties' express agreement—Mr. Smit used the information from the Webex meeting for future patent prosecution efforts. To the extent that was Mr. Nelson's intention, he failed. As Amazon has shown, Mr. Smit spent the next decade parsing the information that Amazon had conveyed in the July 19, 2011 Webex meeting to guide his patent prosecution efforts, thus violating the parties' express agreement. ECF 345-1 (Amazon's Surreply ISO Motion for Terminating Sanctions) at 2-5. He admitted as much. ECF 279-3 (Amazon's Motion for Terminating Sanctions) at 7-10.

Amazon thanks the Court for its time and attention to this important issue.

Dated: June 13, 2022                  HUESTON HENNIGAN LLP

By: */s/ Christina V. Rayburn*
     Christina V. Rayburn

Attorneys for Defendant

- 3 -
Case No. 3:20-cv-08103-WHA
AMAZON SURREPLY RE UNCLEAN HANDS
6138919

AMAZON.COM, INC.

- 4 -
Case No. 3:20-cv-08103-WHA
AMAZON SURREPLY RE UNCLEAN HANDS

6138919